**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COLUMBIA AIR SERVICES, INC., individually and on behalf of all others similarly situated, :<br><br>Plaintiff, :<br> v. :<br><br>FIDELITY MANAGEMENT TRUST COMPANY, FIDELITY INVESTMENT INSTITUTION OPERATIONS COMPANY, INC. and FIDELITY MANAGEMENT AND RESEARCH COMPANY, :<br><br>Defendants. | NO.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Columbia Air Services, Inc. ("Plaintiff"), individually and on behalf of a class of all others similarly situated, by its attorneys, alleges the following for its Complaint ("Complaint"):

## I. NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.     Plaintiff is the sponsor and plan administrator for the Columbia Group of Companies 401(k) Retirement Savings Plan ("Plan").  Plaintiff brings this action on behalf of the Plan and all other administrators and trustees (the "Class") on behalf of similarly situated plans (the "Class Plans") pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2)and (3), for breaches of fiduciary duties and self-dealing by Fidelity Management Trust Company, the Plan's trustee, Fidelity Management and Research Company and Fidelity Investment Institution Operations Company (collectively, "Defendants").

2.      As more fully set forth below, Defendants breached their fiduciary duties owed to the Plan and the Class Plans, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550.   Defendants also engaged in prohibited transactions in violation of ERISA § 406 (b), 29 U.S.C. § 406 (b). As a result of these breaches, Defendants are liable to the Plan and the Class Plans for all losses resulting from each such breach of fiduciary duty.  Plaintiff also seeks equitable relief.

3.      Plaintiff's claims arise out of Defendants' improper receipt of consideration for services rendered to the Plan in excess of that expressly agreed to under the Plan, and from Defendants' improper use of Plan assets to benefit Fidelity Trust and other Fidelity investors. Whenever the Plan or its Participants authorized the transfer of funds into Plan accounts or withdrew funds from the Plan, Defendants temporarily transferred the funds to other accounts which earned income and interest.  Defendants failed to credit the interest and income to the Plan.  Instead, it was used to pay some of Fidelity Trust's own expenses, and the remainder was credited to investment accounts benefitting all investors in those accounts.

## II.  JURISDICTION AND VENUE

4.      Plaintiff's claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

5.      This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.      Venue is proper in this District in that this District is where the breaches took place and where Defendants reside or may be found.

2

### III.  THE PARTIES

7.      Plaintiff Columbia Air Services, Inc., is a Connecticut corporation with its principal place of business in Groton, Connecticut.

8.      Defendant Fidelity Management Trust Company ("Fidelity Trust"), is a Massachusetts Corporation with its principal place of business in Boston, Massachusetts.

9.      Defendant Fidelity Investment Institution Operations Company, Inc. ("Fidelity Operations"), is a Massachusetts Corporation with its principal place of business in Boston, Massachusetts.

10.     Defendant Fidelity Management & Research Company ("Fidelity Research") is a Massachusetts Corporation that has a principal place of business in Boston, Massachusetts.

### IV. THE PLAN AND THE TRUST

11.     The Plan is an employee benefit Plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A). The purpose of the Plan is to provide retirement benefits to Plan Participants.

12.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provided for individual accounts for each Participant and for benefits based solely upon the amount contributed to those accounts, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's account.  Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's

account. The Plan is a typical 401(k) retirement plan similar to those offered by employers throughout the country.

13.     A number of services may be provided to defined contribution retirement plans in order for them to operate. These services include selection and monitoring of appropriate mutual funds for the investment of plan assets, consulting and financial advice concerning investment selection and monitoring, record keeping to keep track of employee contributions and accounts, custodial or trust services to hold and invest plan assets and communications to employees to advise and educate employees regarding the operation of the plan and investment of plan assets.

14.     The Plan was created through execution of an adoption agreement by Plaintiff and Fidelity Trust adopting a Fidelity form plan document as the Plan. The adoption agreement included limited information specific to the Plan such as the name of the Plan, the name and address of the Plan administrator, the name of the Plan Trustee (in this case Fidelity Trust), and similar information.

15.     The Plan document included a Trust Agreement which provided for establishment of a trust to hold Plan assets.  The Trust Agreement became effective upon execution of the adoption agreement.

16.     The Plan document provided that Defendant Fidelity Trust agreed to accept all of the duties of trustee under the Plan by execution of the adoption agreement. In particular, Fidelity Trust agreed to open and maintain a trust account for the Plan and individual accounts for each participant in the Plan, accept contributions on behalf of participants to the Plan, invest

and reinvest Plan assets and hold securities owned by the Plan in accordance with the terms of the Plan.

17.     Consistent with this provision of the Plan, Plaintiff and Fidelity Trust entered into a Service Agreement which specifically enumerated certain services to be provided by Fidelity Trust and the fees to be paid to Fidelity Trust for providing all of these services.

18.     Pursuant to the Service Agreement and in its capacity as trustee, Defendant Fidelity Trust directed Plaintiff to a list of available investment options for the Plan. The list of "permissible" investment options was determined by Defendant Fidelity Trust pursuant to Fidelity Trust's agreements with related companies that controlled the mutual funds on the list.

19.     Plaintiff did not have the authority, under the contract, to determine which mutual funds would be included on the list of "permissible" investments.  Plaintiff only had the authority to determine whether all, or only a subset, of the "permissible" investments would be offered as investment options for assets of the Plan.

20.     Plaintiff selected a number of mutual funds into which Plan assets could be invested from the list of options provided by Defendant Fidelity Trust pursuant to the Service Agreement and subject to other restrictions in the Plan.

21.     The Plan provides that Fidelity Trust "hold the assets of the Trust Fund for the exclusive purpose of providing benefits to Participants and Beneficiaries and defraying the reasonable expenses of administering the Plan."  Similarly, the Plan required that Fidelity Trust make distributions from the Plan only "for the exclusive benefit of Participants or their Beneficiaries, or for the payment of expenses of administering the Plan."

22.    The Plan also specified that Fidelity Trust, as Trustee, had discretion "to employ such agents and counsel as may be reasonably necessary in collecting, managing, administering, investing, distributing and protecting the Trust Fund or the assets thereof and to pay them reasonable compensation."

23.    The Plan specified that Fidelity Trust would be paid for its services as Trustee in "such reasonable amounts as the Trustee may from time to time specify in the Service Agreement or any other written agreement with the Employer."  The Service Agreement, in turn, specified the fees which the Plan would pay for, *inter alia,* recordkeeping and trustee services, nondiscrimination testing services, loan fees, and distribution fees.

24.    Fidelity Trust agreed that it could charge only three types of fees to the Plan and the Class Plans:  (1) an asset-based fee based on a percentage of plan assets held in a particular Plan investment which is based on a portion of the mutual fund expense ratio that is known as revenue sharing; (2) an administrative fee that is a fixed dollar rate per plan participant (also known as a "hard-dollar" payment); and (3) fees for individual participant services such as loans. Defendants could not receive any other consideration for fees and expenses.  These permissible types of fees are set forth in a Fidelity Trust form document entitled "Understanding fees and expenses in your workplace account," which is available on Defendants' website for the Plan's account.

## V.    FACTS CONCERNING DEFENDANTS' BREACHES

25.    This case concerns Defendants' practices of appropriating interest income from the Plan, including as improper additional compensation for Fidelity Trust, in violation of the

Plan and ERISA.  The practices that form the basis of this Complaint were set forth in the recent decision of the U.S. District Court for the Western District of Missouri, Central Division, in *Tussey v. ABB, Inc.,* No. 06-04305-CV-NKL, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012).  On information and belief, the procedures followed with respect to the ERISA plan at issue in that case were the same procedures Fidelity follows with respect to all of the ERISA plans that it manages.

26.     As set forth in the court's opinion in *Tussey,* contributions or withdrawals from Plan accounts are temporarily transferred into other accounts where they earn interest or generate income (the "Float").  Rather than crediting the Float to the plan, such that interest follows the assets, Defendants instead wrongly appropriate a portion of the Float for themselves in excess of the fees agreed to in and through the Trust Agreement, and appropriate the remainder of the Float for the benefit of persons and entities other the Plan.

27.     Employer contributions to a plan are transferred to the Fidelity Participant Recordkeeping System depository account ("Depository Account"), which is registered to Defendant Fidelity Operations.  Fidelity Operations, acting as agent for Fidelity Trust, established a dedicated transfer process by which contributions are then transferred from the Depository Account at 1:00 p.m. and 4:00 p.m. each day to the consolidated repurchase agreement account (the "REPO Account"), which pools funds from other Fidelity Accounts.  Funds in the REPO Account are transferred to the FICASH program ("FICASH"), which invests the assets in secured overnight vehicles.  Defendant Fidelity Research manages FICASH.  The following day, the principal in FICASH is returned to the REPO Account, which transfers those

7

funds back to the Depository Account, at which point the funds are transferred to the selected plan investment options.

28.     A similar process occurs with respect to contributions from plan participants. Their contributions are first transferred into a regional bank account and held overnight.   The following day, these contributions are transferred to the Depository Account; later in the day, the contributions are moved to one of three investment concentration accounts and are then reflected in the books of the individual investment options.

29.     When disbursements of plan assets are authorized, plan participants receive the funds after a series of transfers.   The day after disbursements are authorized, funds are transferred from respective investment concentration accounts into a redemption bank account (the "Redemption Account"), which is registered to Fidelity Operations.   Later in the day, the IRS is paid any taxes due and the remaining funds are transferred to the REPO Account, and then to the FICASH program described in paragraph 26 above.   The next day, the principal amounts are transferred back to the Redemption Account.   After any state taxes are paid, the funds are either sent to participants via electronic disbursement or the funds are transferred to a disbursement account which issues a check to the participants.   Participants receive their funds on or after the day that the principal amounts are transferred back to the Redemption Account from FICASH.

30.     When plans or plan participants authorize transfers between investment options, funds are moved to the Depository Account from the investment concentration account that corresponds to the first investment option.   The funds are then transferred to the investment

concentration account that corresponds to the second investment option.  The investments are "sold" and "purchased," respectively, at the per share net asset value ("NAV") of the investment funds on the date of the purchase or sale request.

31.    As the court found in *Tussey,* funds in all of the accounts (other than the REPO Account) earn interest, and funds invested through the FICASH program earn income when invested in overnight secured vehicles.  The Float – the interest and income earned – is used in the first instance to pay Defendants' expenses for the various accounts into which the funds are transferred, such as the Depository Account.  "Because maintaining these accounts are integral to the services rendered by Fidelity Trust, float income is being used to pay Fidelity Trust's operating expenses for recordkeeping and administering the Plan."  *Tussey,* 2012 WL 1113291, at *33.

32.    The Trust Agreement at issue in *Tussey* was the same as Plaintiff's Trust Agreement here in all material respects:

- Both Trust Agreements specified that Fidelity Trust would hold the assets of the trust funds for the exclusive benefit of plan participants and beneficiaries, and for the defraying of reasonable plan expenses.

- Both Trust Agreements specified that Fidelity Trust was acting as a directed trustee of the Plan Administrator.

- Both Trust Agreements gave Fidelity Trust broad powers to sell, exchange, or otherwise dispose of any of the assets of the trust fund.

- Both Trust Agreements gave Fidelity Trust discretion to employ agents and/or counsel for purposes of carrying out its duties under the Trust Agreement, and pay them reasonable compensation.

- Both Trust Agreements detailed the services that Fidelity Trust would perform and specified (by reference to an attached fee schedule which Fidelity Trust could amend with notice from time to time) the fees that Fidelity Trust would charge for the services it provided.

- Neither Trust Agreement included any language including the Float among permissible fees or otherwise authorizing Defendants to appropriate the Float for their own or any other purposes.

Thus here, as in *Tussey,* Defendants' practices have caused Fidelity Trust to be compensated for its services in excess of the fees agreed to in the trust agreement.

33.     To the extent that any amounts of the Float are left over after payment of Fidelity Trust's banking fees, these amounts are "distributed pro rata among individual investment options that choose to receive it, and thus goes to the benefit of all shareholders of the investment option" rather than being credited solely to the Plan Participants and Beneficiaries.  *Tussey,* 2012 WL 1113291, at *34.   The *Tussey* court specifically found that the decision to use the float income in this way "was made by Fidelity Operations as it chose to register the bank accounts on behalf of the investment options."

34.     Income derived from Plan Assets, such as Float Income, is itself a Plan Asset.  By using the Float to defray Fidelity Trust's administrative expenses, and to increase the NAV of

10

Fidelity Investment Accounts generally, Defendants used their control over Plan Assets to benefit persons and entities other than the Plan, its participants and their beneficiaries.

35.     Neither the Trust Agreement, nor Fidelity Trusts' disclosures to their clients, permit or even disclose the existence of the Float or Defendants' appropriation of it. Accordingly, not only is the use of the Float unauthorized, but Plan fiduciaries such as Plaintiff here are not provided with any information which would permit them to make informed decisions as to whether Defendants' use of the Float constituted excessive compensation.

## VI.     DEFENDANTS ARE PLAN FIDUCIARIES

36.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

37.     Each of the Defendants was a fiduciary during the Class Period as defined by ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), as each either exercised discretionary authority or discretionary control respecting management of the plan, or exercised authority or control respecting management or disposition of Plan assets.

11

38.     Defendant Fidelity Trust is a fiduciary of the Plan.  As the Trustee, Fidelity Trust had "authority or control respecting management or disposition of [plan] assets."  The Trust Agreement provides that Fidelity Trust had the power, *inter alia,* "to sell, lease, convert, redeem, exchange, or otherwise dispose of all or any part of the assets constituting the Trust Fund," to "employ such agents and counsel as may be reasonably necessary in collecting, managing, administering, investing, distributing and protecting the Trust Fund or the assets thereof and to pay them reasonable compensation," and "generally to exercise any of the powers of an owner with respect to all or any part of the Trust Fund."  Indeed, the Trust Agreement stated that "[t]he Trustee . . . and ***any other fiduciary*** shall discharge their duties under the Plan and this Trust Agreement solely in the interests of Participants and their Beneficiaries in accordance with the requirements of ERISA" (emphasis added).   And, as principal for its agent, Fidelity Operations, Fidelity Trust is a fiduciary concerning the abuses of Fidelity Operations alleged below.

39.     Defendant Fidelity Operations is a fiduciary of the Plan.  As the agent for Fidelity Trust, Fidelity Operations established, managed and maintained the Depository Account and the Redemption Account, and used its discretionary authority and control to transfer Plan Assets to the REPO account, and to use the Float to pay Fidelity Trust's bank fees and/or benefit investment accounts not held exclusively by the Plan.  Accordingly, it had authority or control over the management or disposition of Plan Assets.  The *Tussey* court specifically found that the structure set up by the Fidelity entities gave Fidelity Operations discretionary control over Plan Assets. *Tussey,* 2012 WL 1113291, at *32.

12

40.     Defendant Fidelity Research is a fiduciary of the Plan by virtue of its discretionary management and control over Plan Assets transferred to the FICASH program. Fidelity Research exercised discretion in choosing securities as overnight investments for plan assets.  As the *Tussey* court held, Fidelity Research "is a fiduciary to the Plan to the extent it manages Plan assets in FICASH as it exercises discretionary authority and control when it invests Plan assets in various overnight securities."  *Id.* at *34.

## VII. DEFENDANTS HAVE DUTIES OF LOYALTY

41.     ERISA imposes on all plan fiduciaries the duty of loyalty – that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . .  providing benefits to participants and their beneficiaries . . . ."

42.     The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.   A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

43.     Consistent with this duty of loyalty, the Plan expressly provided that Defendant Fidelity Trust would hold Plan assets in trust "for the exclusive purpose of providing benefits to Participants and Beneficiaries and defraying the reasonable expenses of the Plan."

44.     Additionally, and more specifically, ERISA § 406 (b)(1) prohibits a fiduciary from dealing with assets of a plan for its own interest or account.  29 U.S.C. § 406 (b)(1).  The Department of Labor has indicated, in both Advisory Opinion 93-24A and in Field Assistance

13

Bulletin 2002-3, that a trustee's use of Float income for its own benefit constitutes a prohibited transaction, unless the trustee (1) disclosed the float to the independent plan fiduciary at the time the trustee was retained; (2) openly negotiated with the independent plan fiduciary to retain float income as part of its overall compensation; and (3) was not in a position to affect the amount of its Float compensation, as it would, for example, if it had "broad discretion over the duration of the float." FAB 2002-3.  In particular, even if there is disclosure, the service provider may not use the Float to cause "a plan to pay additional fees to the provider." *Id.*  The Department of Labor's advisory opinions and field assistance bulletins are publicly-available documents designed to provide guidance to the regulated community, including ERISA fiduciaries such as Defendants, and Defendants knew or should have known of their requirements.

## VIII.   REMEDIES FOR BREACHES OF FIDUCIARY DUTY

45.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan fiduciary to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary who breaches any of the duties imposed upon fiduciaries to make good to such plan any losses to the plan."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate," which is actionable under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

46.   Plaintiff is a fiduciary of the Plan.  Plaintiff and the Class are therefore entitled to bring suit seeking relief from Defendants in the form of:

(a)   a monetary payment to the Plans to make good to the Plans the loss of benefits to the Plans resulting from the breaches of fiduciary duties alleged above in an amount to be

14

proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. §§ 1109(a) and 1132(a)(2);

(b)        injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a) (3), 29 U.S.C. §§ 1109(a), 1132(a)(3);

(c)        reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; and

(d)        taxable costs and interest on these amounts, as provided by law; and such other legal or equitable relief as may be just and proper.

## IX.  CLASS ACTION ALLEGATIONS

47.        Plaintiff brings this action in part as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all administrators and trustees on behalf of all defined contribution retirement plans for which Defendant Fidelity Trust serves or has served as trustee (the "Class").  Specifically excluded from the Class are the administrators and trustees of the Plan at issue in the *Tussey* litigation.

48.        The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Fidelity Trust's website indicates that over 500 clients, with assets in excess of $260 billion, use its "custom trustee services."  *See* http://institutional.fidelity.com.

49.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants were fiduciaries of the plans;

(b)     whether Defendants breached their fiduciary duties by receiving excessive compensation and/or converting Plan assets to their own use;

(c)     whether Defendants breached their fiduciary duties by failing to credit Float income in full to the plans.

(c)     whether the plans were injured by such breaches; and

(d)     whether the Class is entitled to damages and injunctive relief.

50.     Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

51.     Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained competent counsel.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52.     The Class may properly be certified under Rule 23(b)(3).  Common questions of law and fact clearly predominate in this litigation, as the focus of the suit is on the propriety of Defendants' actions with respect to the Float.  Predominance is highlighted by the testimony of a witness for Fidelity during the *Tussey* trial indicating that Fidelity's system for processing contributions, distributions and transfers, was the same for all of its plan clients.  Moreover, a

class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

53.     Class action status is also warranted under Rule 23(b)(1)(A) because  prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

## COUNT I: BREACH OF FIDUCIARY DUTY

54.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

55.     Interest and income earned from Plan Assets are themselves Plan Assets, and thus the Float was a Plan Asset.

56.     Defendants breached their fiduciary duty of loyalty to the Plan by using the Float to defray Defendants' expenses and to pay themselves unauthorized and excessive compensation.

57.     Defendants also breached their fiduciary duty of loyalty to the Plan by failing to earmark the Float for the benefit of the Plan.  Those portions of the Float that were not used to defray Defendants' expenses were credited to Fidelity Investment accounts, and thus benefited all investors in those accounts.  Even though some small portion of that benefit inured to the Plan – for example, when portions of the float were credited to a Fidelity Investment account in which

17

the Plan itself had invested – the assets were diluted, benefitting all investors in that account and not just the Plan. As the *Tussey* court held, "[b]ecause Plan assets were distributed to investment options neither 'for the exclusive purpose of . . . . providing benefits to participants and their beneficiaries,' nor to defray administration costs for the Plan's benefit, Fidelity Research and Fidelity Trust breached their fiduciary duties of loyalty to the Plan." *Tussey,* 2012 WL 1113291, at *35.

58.     As a consequence of Defendants' breaches, the Plan suffered losses equal to the amount of the Float together with any amounts that could have been earned thereon.

59.     Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under ERISA sections 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).

60.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## COUNT II: PROHIBITED TRANSACTIONS

61.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

62.     There are certain types of transactions that so clearly violate ERISA's fiduciary duties that the statute prohibits them specifically. Defendants' appropriation of the Float violates two of these specific prohibitions.

63.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1)(D), provides that a fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction

18

constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . ."   ERISA defines a "party in interest" to include "any fiduciary (including, but not limited to, any . . . trustee)."  29 U.S.C. § 1002(14)(H).

64.     As discussed above, Defendants were fiduciaries of the Plan, and thus each was a party in interest pursuant to 29 U.S.C. § 1002(14)(H).

65.     Fidelity Operations' use of the Plan's Float to pay Defendants' bank fees is a plan transaction within the meaning of ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1)(D).

66.     Fidelity Operations knew or should have known that, by using plan assets to pay Defendants' bank fees for accounts such as the Depository Account and the Redemption Account, it was using plan assets to indirectly benefit the Defendants, each of whom was a "party in interest."   Accordingly, Defendants engaged in a prohibited transaction under ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1)(D).

67.     Additionally, ERISA § 406 (b)(1), 29 U.S.C. § 1106 (b)(1), prohibits a fiduciary from dealing with assets of a plan for its own interest or account.

68.     The Float is a Plan Asset, and each Defendant is a fiduciary.

69.     Defendants violated ERISA § 406 (b)(1) by using the Float in their own interests by defraying Fidelity Trust's own administrative expenses.  As the *Tussey* court held, "float income is being used to pay Fidelity Trust's operating expenses for recordkeeping and administering the Plan.  This means that Fidelity Trust is earning more income than the Trust Agreement provides . . . ." *Tussey,* 2012 WL 1113291, at *33.

70.     The Department of Labor's Field Assistance Bulletin 2002-3 indicates that a financial service provider's use of float income for its own benefit constitutes a prohibited transaction under ERISA § 406(b)(1) unless the practice is disclosed and openly bargained-for at the time the service provider is retained, and even then, only where the agreement does not permit the service provider to affect (and in particular increase) the amount of its float compensation.  Defendants here (1) did not disclose the Float; (2) did not negotiate for extra compensation in the form of the Float, or provide Plaintiff with information sufficient to understand Defendants' compensation; and (3) had discretion to use the Float to pay themselves excessive compensation.  FAB 2002-3, therefore, confirms that Defendants' actions constitute prohibited transactions under ERISA § 406(b)(1).

71.     Defendants are liable to personally make good to the Plan any losses to the Plan resulting from these prohibited transactions breach under ERISA sections 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).

72.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## COUNT III: CO-FIDUCIARY LIABILITY

73.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

74.     This Count alleges co-fiduciary liability against all Defendants.  As alleged above, the Co-Fiduciary Defendants were fiduciaries within the meaning of ERISA § 3(21)(A),

29 U.S.C. § 1002(21)(A).  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

75.     ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  Defendants breached all three provisions.

76.     **Knowledge of a Breach and Failure to Remedy:**  ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.   Upon information and belief, each Defendant knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

77.     **Knowing Participation in a Breach:** ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. As alleged above, each of the Defendants were intimately involved in the process of generating and improperly disbursing the Float income, and thus knowingly participated in the improper management of that investment by the other Defendants.

78.     **Enabling a Breach:**   ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.   Fidelity Trust enabled the breach by engaging Fidelity Operations and Fidelity Research for purposes of effectuating transfers, contributions and distributions from plans.

79.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the plans lost millions of dollars of retirement savings.

80.     Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), the Co-fiduciary Defendants are liable to restore the losses to the Plan  caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.      Determining that the instant action may be maintained as a class action under Rule 23, Federal Rules of Civil Procedure, appointing Plaintiff as class representative and determining that Plaintiff's counsel satisfies the prerequisites of Rule 23(g);

B.      A Declaration that Defendants breached ERISA fiduciary duties owed to the Plan and Participants;

C.      An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty;

D.      Imposition of a Constructive Trust on any amounts by which Defendants were unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E       An Order for equitable restitution and disgorgement of any Plan assets Defendants obtained as a result of its breaches of fiduciary duty, including the Float, and other appropriate equitable monetary relief against Defendant.

F.      An Order enjoining Defendant from any further violations of their ERISA fiduciary obligations;

G.      Actual damages paid to the Plan in the amount of any losses the Plan suffered;

H.      An Order allocating the Plan's recoveries to the accounts of all Participants;

I.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g); and

J.      An order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine.

Dated: 3/11/13                              Respectfully submitted,

*/s/ Bradford S. Babbitt*
Bradford S. Babbitt, BBO # 566390
Craig A. Raabe
Elizabeth R. Leong
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone: (860) 275-8200
Facsimile:  (860) 275-8299

Robert A. Izard
Jeffrey S. Nobel
Mark P. Kindall
**IZARD NOBEL LLP**
29 South Main Street
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290

**Attorneys for Plaintiff and the Class**